NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIA HERRERA and BIANFI HERRERA, <br><br> Plaintiffs, <br><br> v. <br><br> CENTRAL LOAN ADMINISTRATION & REPORTING, <br><br> Defendant. | Civil Action No.: 17-4774 (JLL) <br><br> OPINION |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of Defendant Central Loan Administration and Reporting's ("Defendant") Motion to Dismiss Plaintiffs Maria Herrera and Bianfi Herrera's ("Plaintiffs") Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 4). Plaintiffs have submitted opposition to Defendant's motion, (ECF No. 7), and Defendant submitted a reply brief, (ECF No. 8). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Defendant's Motion to Dismiss.

## BACKGROUND

Plaintiffs were the owners and residents of the real property located at 695 Raritan Avenue, Perth Amboy, NJ 08861 until it was sold at a foreclosure sale. (ECF No. 1 ("Compl.") ¶ 5). Prior to the foreclosure sale, Plaintiffs submitted complete loss mitigation paperwork to Defendant, who serviced the mortgage loan prior to the foreclosure, but Plaintiffs did not retain a copy of the paperwork. (*Id.* ¶ 6). Over the next several months, Defendant sent incomplete or contradictory documents to Plaintiffs regarding their loss mitigation application. (*Id.* ¶ 7). Plaintiffs made

several attempts to obtain their servicing files from Defendant, including one letter in August 2015 and another in January 2016, with no success. (*Id.* ¶¶ 10, 14). Eventually, Defendant denied Plaintiffs' application and the house was sold at foreclosure on September 28, 2016. (*Id.* ¶ 5).

On September 29, 2016, a day after the foreclosure sale, Plaintiffs served Defendant a request for information related to the servicing of Plaintiffs' mortgage loan in order to determine the validity of the loss mitigation application denial and assess their rights. (*Id.* ¶ 11). Defendant did not respond, and on March 29, 2017, Plaintiffs served Defendant with a Notice of Error. (*Id.* ¶ 12). Defendant responded to the Notice of Error on May 2, 2017, acknowledging its failure to timely respond and indicating that a full response was made to Plaintiffs' August 2015 and January 2016 letters. (*Id.* ¶¶ 13–14). Defendant attached a copy of the responses to the two previous letters denying the loss mitigation application, but did not include the rest of the loss mitigation file that the response letters listed as attached. (*Id.* ¶¶ 14–16). On May 8, 2017, Plaintiffs' counsel wrote a letter to Defendant, explaining that they had not received the full file on the denial of Plaintiffs' loss mitigation application as they originally requested. (*Id.* ¶ 16). Defendant has not replied to this letter. (*Id.* ¶ 17). Accordingly, Plaintiffs brought this action to compel Defendant to comply with the Real Estate Settlement Procedures Act ("RESPA"), and disclose the requested information. (*Id.* ¶ 18).

## **LEGAL STANDARD**

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the Court must take three steps. "First, it must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ANALYSIS

Both Plaintiffs and Defendant agree that, to state a claim under RESPA, a plaintiff must identify a violation of one of the statute's obligations and then assert either actual damages or a pattern or practice of noncompliance. (ECF No. 4-2, at 6; ECF No. 7, at 9). Defendant raises three arguments against the allegations alleged in Plaintiffs' complaint: (1) Plaintiffs' September 29, 2016 letter was not a qualified written request ("QWR") as defined by RESPA, and thus did not require a response; (2) Plaintiffs previously received the information requested in the QWR; and (3) Plaintiffs have not alleged any actual damages, nor any pattern or practice of noncompliance

on the part of Defendant. The Court addresses each of these issues separately below and dismisses Defendant's Motion.

### A. Qualified Written Request

The Court finds that Plaintiffs' September 29, 2016 letter did amount to a QWR. Under 12 U.S.C. §2605(e)(1)(B)(ii), a QWR is a "written correspondence . . . that includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." To state a claim for failure to respond to an information request, a plaintiff must plead sufficient facts "support[ing] the reasonable inference that" the plaintiff sent a QWR to the defendant as described in 12 U.S.C. §2605(e)(1)(B)(ii). *Tredo v. Ocwen Loan Servicing, LLC*, No. 14-cv-3013, 2014 WL 5092741, at *9 (D.N.J. Oct. 10, 2014).

Defendant argues that Plaintiffs' September 29, 2016 letter did not amount to a QWR because it failed to include any reason to believe their account contains an error, thus making this a baseless request. (ECF No. 4-2, at 10). Plaintiffs respond by pointing out the QWR standard does not require a "statement of reasons," it only requests that one be provided to "the extent applicable." (ECF No. 7, at 11). The Court agrees that, even if a statement of reasoning is not included, Plaintiffs can still satisfy the QWR requirement by providing "sufficient detail to the servicer regarding other information sought." *See Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th Cir. 2011) ("[t]o the extent that a borrower is able to provide reasons for a belief that the account is in error, the borrower should provide them, but any request for information made with sufficient detail is enough under RESPA to be a qualified written request and thus to trigger the servicer's obligations to respond."). The plain language of 12 U.S.C. §2605(e)(1)(B)(ii) also supports the finding that a borrower can provide either a statement of reasons *or* sufficiently

4

detailed information regarding the loan sought. Specifically, the fact that the statute uses the words "if applicable" and "or" between its description of "statement of reasons" and "sufficient detail to the servicer" indicates that the Plaintiffs have a choice to include either one of these in its letter to qualify as a QWR. *See* 12 U.S.C. §2605(e)(1)(B)(ii) ("includes a statement of the reasons for the belief of the borrower, *to the extent applicable*, that the account is in error *or* provides sufficient detail to the servicer regarding other information sought by the borrower.") (emphasis added).

Here, Plaintiffs' September 29, 2016 letter was three pages long with a detailed, bulleted list of the information they were seeking. (ECF No. 1-1 at Ex. 2) (requesting (1) the servicing file, (2) identities of several parties, (3) explanations of all loss mitigation available, (4) the amount needed to reinstate the loan, and (5) an accounting of all payments received, among other things). The Court finds Plaintiffs' September 29, 2016 letter went into sufficient detail about the loan being sought, and that is enough for the letter to meet the QWR standard. *See Catalan*, 629 F.3d at 687 ("RESPA does not require any magic language before a servicer must construe a written communication from a borrower as a qualified written request and respond accordingly. . . . Any reasonably stated written request for account information can be a qualified written request."). Therefore, the Court rejects Defendant's argument that Plaintiffs did not provide an appropriate QWR.

### B. Previous Receipt of Information

The Court is not persuaded by Defendant's argument that Plaintiffs already received the requested information. Under RESPA, a defendant has 30 days from the receipt of a borrower's QWR to respond to the request, and, if applicable, shall include (1) appropriate corrections in the borrower's account; (2) provide a written explanation including a statement of reasons why the defendant believes the account was correct as determined; and (3) provide a written explanation

5

including information requested by the borrower or an explanation of why the information requested was not available. *See* 12 U.S.C. §2605(e)(2)(A)–(B). Here, the record indicates that Defendant did not respond to Plaintiffs' September 29, 2016 letter until May 2, 2017, nearly a year after the letter was sent. (ECF No. 7, at 6–7; *see also* ECF No. 1-1, at Ex. A) ("It appears [Plaintiffs'] requests for information dated September 29, 2016 . . . were received by [Defendant] on October 11, 2016 . . . but not forwarded to the appropriate area for response.").

Despite its delays, Defendant argues that the information Plaintiffs requested was already provided and thus no violation occurred for the Court to remedy. (ECF No. 4-2, at 11). As evidence of Defendant's claim, Defendant points to its letter indicating Plaintiffs were sent a full loan history, a statement of the current holder of the mortgage, the full arrearages on the account, and all four denial letters of prior loan modification applications. (*Id.*; *see also* ECF No. 1-1, at Ex. 3) (showing one letter Defendant sent to Plaintiffs responding to their requests and two forwarded responses to past letters by Plaintiffs, but none of the documents that the letter states were attached). However, Plaintiffs contend that Defendant did not include the entire loss mitigation file but instead only included two old letters denying Plaintiffs' application. (ECF No. 7). As evidence of their claim, Plaintiffs point to Defendant's acknowledgment that it sent "most" of the requested material in its older letters and not all of it. (ECF No. 7, at 7; ECF No. 1-1, at Ex. 1) ("[Defendant's] records indicate that we responded to two previous letters from August 19, 2015 and January 4, 2016 which provided *most* of the information requested.") (emphasis added). The May 8, 2017 letter from Plaintiffs' counsel offers further support that Plaintiffs have not been provided with all the information they requested because their counsel again asks for the entire file on the loss mitigation application in comparison to just the two denial letters that Plaintiffs claimed to receive. (ECF No. 7, at 8; *see also* ECF No. 1-1 at Ex. 1).

Defendant's contention that "most" of the information has been provided does not persuade the Court that Plaintiffs have been provided all the requested information regarding their loss mitigation application. Plaintiffs have made at least five requests on the record that seem to have not been fully met, including one letter in August 2015 and another in January 2016, (Compl. ¶ 14); the September 29, 2016 letter analyzed above, (Compl. ¶ 11); the March 29, 2017 Notice of Error, (Compl. ¶ 12); the May 8, 2017 letter from Plaintiffs' counsel, (Compl. ¶ 16); and countless more attempts by Plaintiffs to contact Defendant for the information, (Compl. ¶¶ 10, 18). Considering Defendant's Motion to Dismiss is reviewed under a plausibility standard, Plaintiffs' facts need only "plausibly give rise to an entitlement for relief." *See Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 675, 679) (citations omitted). Plaintiffs have shown several requests that indicate Defendant may have violated its reporting obligation under RESPA by not disclosing the requested information, and so the Court concludes that Plaintiffs have alleged sufficient facts to survive Defendant's Motion to Dismiss regarding the breach of RESPA duties.

**C. Damages**

The Court finds that Plaintiffs made a sufficient showing of statutory damages to survive Defendant's Motion to Dismiss. As Defendant correctly points out, "a breach of RESPA duties alone is not sufficient to state a claim, a party must also allege damages." *Jobe v. Bank of Am., N.A.*, No. 10-cv-1710, 2012 WL 7849939, at *8 (M.D. Pa. Apr. 5, 2013) (citing *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)). In order to survive a motion to dismiss on a cause of action under RESPA, a plaintiff must sufficiently allege either (i) actual damages as a result of the failure to comply with 12 U.S.C. § 2605 or (ii) statutory damages in the case of a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605. *Block v. Seneca Mortg. Servicing*, No. 16-cv-0449, 2016 WL 6434487, at *22 (D.N.J. Oct. 31, 2016) (citing

*Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 781 (D.N.J. 2016)). The statute contains an express requirement that damages accrue "as a result of the failure" to comply with the provisions. *See* 12 U.S.C. § 2605(f). For actual damages, a causal link must be shown between the defendant's violation and the plaintiff's injuries. *Giordano*, 160 F. Supp. 3d, at 781. For statutory damages, a pattern or practice of noncompliance requires more than one alleged violation of RESPA. *See Giordano*, 160 F. Supp. 3d, at 785 (holding that dismissal was proper when an alleged pattern or practice was based on only one incident of non-compliance).

Defendant argues that Plaintiffs' complaint fails to mention any actual harm caused by Defendant's delays and nonresponses, so actual damages cannot be shown. (ECF No. 8, at 4). Furthermore, Defendant claims that its failure to respond to one letter does not qualify as a pattern or practice of noncompliance. (ECF No. 8, at 3). Plaintiffs do not respond to the allegation that no actual damages can be shown, but instead point to the multiple instances in the record of Defendant either not responding or not giving a full disclosure to Plaintiffs' requests in order to prove a pattern or practice of noncompliance. (ECF No. 7, at 14). What Defendant fails to recognize is that Plaintiffs are not alleging a failure to respond to one letter, but several instances of noncompliance with Plaintiffs' requests and letters that occurred over two years and continues today. (Compl. ¶¶ 11–17) (showing Plaintiffs' continued attempts to contact Defendant and never receiving the full information that they requested). As of now, the record reflects at least five letters that went without a timely and full response. (*Id.*). Upon further development of the case, those alleged violations may be enough to show a "pattern or practice of noncompliance." *See Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 448–49 (E.D.N.Y. 2013) (holding that pattern or practice was shown for nonresponse to Plaintiffs' information request when Plaintiff alleged more than two incidents of non-compliance).

In response, Defendant points to the case *Cole v. Wells Fargo Bank, N.A.*, No. 12-cv-1932, 2016 WL 1242765 (D.N.J. Mar. 30, 2016) to support its argument that its failure to respond to Plaintiffs' letters is insufficient for statutory damages. (ECF No. 8, at 5). In *Cole*, this Court found no pattern or practice to recover statutory damages when the defendant failed to respond to five separate letters until six months after the first was sent. *Id.* at *27. Defendant argues that if five letters and conclusory statements were not enough to show statutory damages in *Cole*, then the five letters in this case are not enough either. (ECF No. 8, at 5). However, *Cole* is largely distinguishable from this case, because *Cole* was decided on summary judgment, after the benefit of discovery, while this case is at the motion to dismiss phase. At this juncture, with only the Plaintiffs' complaint and a scant record, it would be premature to foreclose Plaintiffs' statutory damages claim when they sufficiently alleged a *prima facie* showing that Defendant may have committed a pattern or practice of noncompliance. Therefore, the Court finds that Plaintiffs were able to carry their burden in showing that their statutory damages claim is sufficiently plausible to survive Defendant's Motion to Dismiss. Based on these findings, the Court rejects Defendant's arguments regarding statutory damages and hereby denies Defendant's Motion to Dismiss.

## CONCLUSION

For the reasons above, the Court denies Defendant's Motion to Dismiss. An appropriate Order accompanies this Opinion.

/s/ Jose L. Linares

JOSE L. LINARES
Chief Judge, United States District Court

Date: October 12th, 2017